IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROBERT VANDERPLOEG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| vs. | ) |
| | ) Case No. |
| TRIANGULAR REALTY IV LLC, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW, ROBERT VANDERPLOEG, by and through the undersigned counsel, and files this, his Complaint against Defendant, TRIANGULAR REALTY IV LLC, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2. Plaintiff, ROBERT VANDERPLOEG (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3. Plaintiff is disabled as defined by the ADA.

1

4. Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking and standing.

5. Plaintiff uses a wheelchair for mobility purposes.

6. Plaintiff is also an independent advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property, including returning to the Property within six months after it is accessible ("Advocacy Purposes").

7. Defendant, TRIANGULAR REALTY IV LLC (hereinafter "TRIANGULAR REALTY IV LLC"), is a Texas limited liability corporation that transacts business in the State of Texas and within this judicial district.

8. Defendant, TRIANGULAR REALTY IV LLC, may be properly served with process for service via its registered agent, to wit: c/o Jon Liu, Registered Agent, 5333 Navarro Street, Houston, TX  77056.

**FACTUAL ALLEGATIONS**

9. On or about September 3, 2020, Plaintiff was a customer at "Taqueria Chalupas" a business located at 17926 Highway 6, Webster, TX  77598, referenced herein as "Taqueria Chalupas". Attached is a receipt documenting Plaintiff's purchase. *See* Exhibit 1. Also attached is a photograph documenting Plaintiff's visit to the Property. *See* Exhibit 2.

10. Plaintiff lives four miles from the Property.

11. Defendant, TRIANGULAR REALTY IV LLC, is the owner or co-owner of the real property and improvements that Taqueria Chalupas is situated upon and that is the subject of this action, referenced herein as the "Property."

12. Plaintiff's access to the business(es) located 17926 Highway 6, Webster, TX 77598, Harris County Property Appraiser's account number 0361310000027 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant, TRIANGULAR REALTY IV LLC, is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

13. For purposes of this lawsuit, the "site" shall be considered the shopping plaza with vehicular entry off of Old Galveston Road. This "site" includes the main parking lot as well as the 19 parking spaces in the back of the building. Although the building located at 123 W. NASA Pkwy, Webster, TX 77598 is on the parcel, it is a separate building, it utilizes a different parking lot and it is clear from the ground it is separate from the main site.

14. Defendant, TRIANGULAR REALTY IV LLC, as property owner, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property. Even if there is a lease between Defendant, TRIANGULAR REALTY IV LLC, and the tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations. *See* 28 CFR § 36.201(b).

15. Plaintiff has visited the Property at least once before as a customer and advocate for the disabled. Plaintiff intends on revisiting the Property within six months after the barriers to access detailed in this Complaint are removed and the Property is accessible again. The purpose of the revisit is to be a return customer, to determine if and when the Property is made accessible and to maintain standing for this lawsuit for Advocacy Purposes.

16. Plaintiff intends on revisiting the Property to purchase goods and/or services as a return customer living in the near vicinity as well as for Advocacy Purposes, but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

17. Plaintiff travelled to the Property as a customer and as an independent advocate for the disabled, encountered the barriers to access the Property that are detailed in this Complaint, engaged those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access present at the Property.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

18. On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

19. Congress found, among other things, that:

(i) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)     discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)     individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

20.     Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)     provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

\* \* \* \* \*

(iv)     invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

21.     The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

22.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C.

§ 12181; 28 C.F.R. § 36.508(a).

23. The Property is a public accommodation and service establishment.

24. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

25. Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

26. The Property must be, but is not, in compliance with the ADA and ADAAG.

27. The Property is comprised of multiple buildings served by a single parking lot. All of the buildings on the Property are public accommodations.

28. Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property as well as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

29. Plaintiff intends to visit the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his

access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

30. Defendant, TRIANGULAR REALTY IV LLC, has discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

31. Defendant, TRIANGULAR REALTY IV LLC, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, TRIANGULAR REALTY IV LLC, is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

32. A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Complaint, that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

(i) Near Unit 105, there are two accessible parking spaces that are missing identification signs in violation of Section 502.6 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to locate an accessible parking space.

(ii) Near Unit 105, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(iii) Near Unit 105, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards. This violation would make it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(iv) Near Unit 105, the Property has an accessible ramp leading from the accessible parking space to the accessible entrances with a slope exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access the units of the Property.

(v) Near Unit 105, there is a vertical rise with a height exceeding ¼ inch at the base of the accessible ramp in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access public features of the Property.

(vi) Near Unit 105, the Property has an accessible ramp that lacks finished edges or edge protection and/or is otherwise in violation of Section 405.9 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to access the units of the Property.

(vii) Near Unit 101, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4

of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(viii) Near Unit 101, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards. This violation would make it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(ix) Near Unit 101, the accessible parking space is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to locate an accessible parking space.

(x) Near Unit 101, the Property has an accessible ramp leading from the accessible parking space to the accessible entrances with a slope exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access the units of the Property.

(xi) Near Unit 101, there is a vertical rise at the top of the accessible ramp with a height exceeding ¼ inch in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access public features of the Property.

(xii) There are an inadequate number of accessible parking spaces servicing the Site in violation of section 208.2 of the 2010 ADAAG Standards. There are a total of 103 parking spaces on the Site (main parking lot 83 parking spaces and rear 19 parking spaces), yet there are only three (3) accessible parking spaces on the site. There should be five (5) accessible parking spaces on the Site. This violation

would make it difficult for Plaintiff to locate an available accessible parking space.

(xiii) Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

**TAQUERIA CHALUPAS RESTROOMS**

(xiv) The hand operated flush control is not located on the open side of the accessible toilet in violation of Section 604.6 of the 2010 ADAAG standards. This would make it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

(xv) The restrooms have grab bars adjacent to the commode which are not in compliance with Section 604.5.2 of the 2010 ADAAG standards as the rear bar is too short and does not properly extend at least 24 inches from the centerline of the toilet. This would make it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

(xvi) The accessible toilet stall door is not self-closing and violates Section 604.8.2.1 of the 2010 ADAAG standards. This would make it difficult for the Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

(xvii) The door exiting the restroom lacks a clear minimum maneuvering clearance, due to the proximity of the door hardware within 18 inches to the adjacent sink, in violation of Section 404.2.4 of the 2010 ADAAG standards. This would make it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

(xviii) The mirror in the bathrooms exceeds the maximum height permitted by Section 603.3 of the 2010 ADAAG standards. This violation would make it difficult for the Plaintiff and/or any disabled individual to properly utilize public features of the restroom.

(xix) The door to the restrooms has a maximum clear width below 32 (thirty-two) inches in violation of Section 404.2.3 of the 2010 ADAAG standards. This would make it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

(xx) The door exiting the restroom area lacks a clear minimum maneuvering clearance, due to the proximity of the door hardware within 18 inches to the adjacent wall, in violation of Section 404.2.4 of the 2010 ADAAG standards. This would make it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

33. The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

34. Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

35. The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

36. All of the violations alleged herein are readily achievable to modify to the Property into compliance with the ADA.

37. Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

38. Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, TRIANGULAR REALTY IV LLC, has the financial resources to make the necessary modifications. According to the Property Appraiser, the Appraised value of the Property is $2,598,606.00.

39. The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction from the IRS for spending money on accessibility modifications.

40. Upon information and good faith belief, the Property has been altered since 2010.

41. In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

42. Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant, TRIANGULAR REALTY IV LLC, is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

43. Plaintiff's requested relief serves the public interest.

44. The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, TRIANGULAR REALTY IV LLC.

45.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, TRIANGULAR REALTY IV LLC, pursuant to 42 U.S.C. §§ 12188 and 12205.

46.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, TRIANGULAR REALTY IV LLC, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a) That the Court find Defendant, TRIANGULAR REALTY IV LLC, in violation of the ADA and ADAAG;

(b) That the Court issue a permanent injunction enjoining Defendant, TRIANGULAR REALTY IV LLC, from continuing their discriminatory practices;

(c) That the Court issue an Order requiring Defendant, TRIANGULAR REALTY IV LLC, to (i) remove the physical barriers to access and (ii) alter the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d) That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e) That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: October 29, 2020.

Respectfully submitted,

/s/ Douglas S. Schapiro
Douglas S. Schapiro, Esq.
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L

13

7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com

14